

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-15-00185-CV

IN THE INTEREST OF C.C. and I.C., CHILDREN

_____

No. 07-15-00220-CV

IN THE INTEREST OF A.E. and A.E., CHILDREN

_____

On Appeal from the 320th District Court
Potter County, Texas
Trial Court Nos. 85,000-D & 76,485-D; Honorable Don Emerson, Presiding

September 29, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

In a consolidated hearing of two cases, the trial court terminated the parental rights of E.V.,[1] to her four children, C.C., I.C., A.E., and A.E.[2]  By a single issue, E.V.

_____

[1] To protect the parent's and children's privacy, we refer to E.V. and other parties by their initials. See TEX. FAM. CODE ANN. § 109.002(d) (West 2014).  See also TEX. R. APP. P. 9.8(b).

[2] The parental rights of J.C., the father of C.C. and I.C., and the parental rights of S.E., the father of A.E. and A.E., were also terminated.  Neither father appealed.

asserts the evidence is legally and factually insufficient to support the trial court's order under section 161.001(1) of the Texas Family Code.[3] We affirm.

**BACKGROUND**

E.V. had four children removed from her by the Texas Department of Family and Protective Services in January 2014.[4] The two older siblings, A.E. and A.E., were both born in 2005, nine months apart, while C.C. and I.C. were born in 2009 and 2012, respectively. While the actual circumstances surrounding the physical removal of the children from E.V. were not established, the record does make clear they were removed from E.V. and placed in the protective care of the Department due to the "deplorable living conditions" found at a residence.

The testimony establishes that officers of the Amarillo Police Department were dispatched to a residential area following a police report concerning a man running down the street yelling for help. Officers found the man in a hysterical state, smelling of human feces, and bleeding from his head and his ears. In the course of their investigation, the officers were directed by the injured man to the residence. When they knocked on the door of the residence, the television and lights were turned off, but no one answered.

---

[3] Tex. Fam. Code Ann. § 161.001(1) (West 2014). Effective April 2, 2015, section 161.001(1) was recodified as section 161.001(b)(1). *See* Act of March 30, 2015, 84th Leg., R.S., S.B. 219, ch. 1, § 1.078, 2015 Tex. Sess. Law Serv. __ (West 2015). The recodification did not change the substantive law, therefore, for purposes of clarity, henceforth we will refer to this section by its recodified number. Unless otherwise designated, all future references to section or § are references to the Texas Family Code.

[4] The record indicates that E.V. has other children but they were not parties to the underlying proceedings.

The officers proceeded to the backyard of the house and observed two toilets filled with feces. The house was "run-down" with "junk" strewn about. The officers entered the house and observed filth and trash and smelled feces and urine. One bathroom of the house was missing the toilet and the other bathroom appeared inoperable. The house had no running water.[5]

E.V.'s counselor testified that E.V. was referred to her as part of a treatment plan arising from allegations of exposing her children to deplorable living conditions, drugs, violence, and abusive relationships, including a dating relationship with a registered sex offender. Through the testimony of several counselors who treated the children, the court heard evidence that the children were exposed to drugs, three of the four children tested positive for methamphetamine, some were in need of medical and dental care, some were infected with lice, and C.C. suffered from anxiety, displayed aggressive behavior, and used inappropriate terminology.

Following presentation of the testimony, the trial court announced, without specifying grounds under section 161.001(b)(1), "[a]ll of the parents' rights are terminated." By written order in each separate cause number, the trial court found that E.V.:

    (1)   knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being;

---

[5] The affidavit in support of the petition for termination recites a probable kidnapping and beating of the victim by occupants of the residence and that E.V. was arrested as a result of that incident. However, no evidence was admitted to support those allegations. *See In re B.P.*, No. 07-14-00037-CV, 2014 Tex. App. LEXIS 8127 (Tex. App.—Amarillo July 25, 2014, pet. denied) (mem. op.) (declining to find hearsay statements contained in an affidavit in support of a petition for termination as evidence to sustain grounds for termination). *See also In re J.E.H.*, 384 S.W.3d 864, 869-71 (Tex. App.—San Antonio, no pet.).

(2)    engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being;

(3)    failed to support the children in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition; and

(4)    failed to comply with the provisions of a court order that specifically established the actions necessary for E.V. to obtain the return of her children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of their removal from the parent under chapter 262 for abuse and neglect.

TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (F), (O).   The trial court also found that termination of E.V.'s parental rights was in the children's best interest.   *Id.* at § 161.001(b)(2).   No request was filed for the trial court to enter findings of fact and conclusions of law.

**STANDARD OF REVIEW IN TERMINATION CASES**

The natural right existing between parents and their children is of constitutional dimension.  *See Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982).  *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).  Consequently, termination proceedings are strictly construed in favor of the parent.  *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights.  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights.  *See In*

4

*re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2014). *See also In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard onto our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re E.N.C.*, 384 S.W.3d at 802 (citing *In re J.F.C.*, 96 S.W.3d at 266). To give appropriate deference to the fact finder's conclusions, we must assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* As a corollary to this requirement, an appellate court should also disregard all evidence that a reasonable fact finder could have disbelieved or found to been incredible.[6] *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the fact finder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's

---

[6] This does not mean that a court must disregard *all* evidence that does not support the finding. To do so could skew the analysis of whether there is clear and convincing evidence. See *In re E.N.C.*, 384 S.W.3d at 802.

allegations.  *Id.*  In doing so we consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding.  If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.  *In re J.F.C.*, 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(b)(1) and termination is in the children's best interest.  *See* § 161.001(b)(1), (2) (West 2014); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

### ANALYSIS

E.V.'s parental rights to her children were terminated on the grounds enumerated in section 161.001(b)(1)(D), (E), (F), and (O).  While E.V. acknowledges that the Department presented "some evidence" to support termination, by her sole issue, she argues the evidence fell short of the clear and convincing evidence needed to sustain the order of termination.  While we agree the evidence was insufficient as to sections 161.001(b)(1)(D) and (O), we find there is clear and convincing evidence to support termination of E.V.'s parental rights to the four children involved under section 161.001(b)(1)(E).  Because only one statutory ground is required to terminate parental rights under section 161.001(b)(1), *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San

6

Antonio 2000, no pet.), we pretermit discussion of the sufficiency of the evidence as to section 161.001(b)(1)(F).

**§ 161.001(b)(1)(D)**

Under subsection (D), parental rights may be terminated when clear and convincing evidence shows that a parent knowingly placed or knowingly allowed her children to remain in conditions or surroundings that endanger the physical or emotional well-being of the children. We examine the time before the children's removal to determine whether the environment itself posed a danger to the children's physical or emotional well-being. *Ybarra v. Tex. Dep't of Human Services*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no writ). Although the focus of subsection (D) is on the children's living environment and not on the parent's conduct, parental conduct may produce an endangering "environment." *See In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied). *See also Matter of B.R.*, 822 S.W.2d 103, 105-06 (Tex. App.—Tyler 1991, writ denied) (citing *In Interest of L.S.*, 748 S.W.2d 571 (Tex. App.—Amarillo 1988, no writ)).

The focus of subsection (D) is the children's living environment. In these cases, the evidence, at best, is weak to support termination under that ground. Although photographs of the deplorable living conditions were introduced into evidence, there is only innuendo to connect whether the children actually resided in that home. Therefore, subsection (D) does not support termination of E.V.'s parental rights.

**§ 161.001(b)(1)(O)**

Parental rights may be terminated under section 161.001(b)(1)(O) if the Department establishes the children were removed under chapter 262 because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parent to obtain the return of the children; and the parent failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d at 278-79. Here, we are left to speculate as to why the children were removed from E.V. Was it because of abuse or neglect, or was it because she was arrested and couldn't care for the children? Were the children removed from the residence discussed above, or were they removed from another residence? The fact is we were not provided that information. Furthermore, under subsection (O), there must be a written court order specifying what a parent must do for the return of her children, *In re B.L.R.P.*, 269 S.W.3d 707, 710-11 (Tex. App.—Amarillo 2008, no pet.), and the Department must provide some evidence that the family service plan with which the parent must comply is incorporated in a court order. *In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] pet. denied).

In the underlying cases, temporary orders provided as follows:

> [E.V.] is ORDERED, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, *or any amended*, service plan during the pendency of this suit.

(Emphasis added).

The emphasized language creates a fluid order subjecting a parent to amendments to an existing family service plan. To order a parent to comply with requirements that may

8

be added at a future date, by someone other than a judicial officer, is not a "court order specifically establish[ing] the actions necessary for the parent to obtain the return of the child" and cannot be what the Legislature intended under subsection (O). *In re B.L.R.P.*, 269 S.W.3d at 710-11. Consequently, under the facts of this case, subsection (O) does not support termination of E.V.'s parental rights.

### § 161.001(b)(1)(E)

Parental rights may be terminated under subsection (E) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children. The cause of the danger to the children must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re D.T.,* 34 S.W.3d at 634. "Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996), (citing *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). *See also In re T.N.*, 180 S.W.3d at 383. Endangering conduct may include the parent's actions before a child's birth, while the parent had custody of older children. *In the Interest of J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

E.V.'s counselor testified the children were exposed to drugs and violence and that E.V. was dating a registered sex offender. E.V. denied any drug use during her sessions with her counselor but did admit to daily drug use before beginning her treatment plan. Three of E.V.'s children tested positive for methamphetamine. The children reported to their counselors that they were exposed to firearms and one of the children had pulled the trigger on a gun.

According to C.C.'s counselor, the children defecated in plastic bags or toilets filled with feces and urinated into cups because the bathrooms were inoperable. She testified to an incident where the children were locked out of a room filled with adults while they filled baggies with a white powder. One of E.V.'s daughters was grabbed by her arm and thrown out of a room during an incident of domestic violence between E.V. and an abusive boyfriend. The children also complained of inadequate nutrition.

Although E.V. made strides with her service plan and was cooperating with the Department, she had a history of drug use and irresponsible choices that endangered the children's physical and emotional well-being. *See In the Interest of J.O.A.*, 283 S.W.3d at 346. Evidence of improved conduct does not negate a history of endangering conduct. *Id.* By dating a registered sex offender and being involved in abusive relationships, E.V. exposed the children to persons who engaged in conduct which endangered their physical and emotional well-being. E.V.'s lifestyle was a conscious course of endangering conduct. Viewing the evidence in the light most favorable to the trial court's order, we conclude there was clear and convincing evidence on which a reasonable fact finder could have formed a firm belief or conviction of endangerment under subsection (E). *In re J.F.C.*, 96 S.W.3d at 266.

BEST INTEREST

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(b)(1), we must also find clear and convincing evidence that termination of the parent-child relationship was in the children's best interest. *See* § 161.001(b)(2). There is a strong presumption that the best interest of the children will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the children in a safe environment is also presumed to be in their best interest. *See* § 263.307(a). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. The Supreme Court has set out additional factors to consider when determining the best interest of the children. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the children; (6) the plans for the children by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and

the totality of the evidence as well as direct evidence.  *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

ANALYSIS

E.V. makes a global, conclusory statement challenging the trial court's best interest finding.  Without any argument or authority, she asserts "There is no evidence that termination would be in the children's best interest."  Her vague challenge notwithstanding, we review the record for sufficient evidence to support the trial court's best interest finding.

Following removal from their home, C.C. and I.C. were placed with their paternal aunt.  A.E. and A.E. were placed with their paternal grandmother.  C.C.'s counselor testified that when their sessions began, he was an aggressive child who knew and used inappropriate terminology.  With treatment, his anxiety and aggressive behavior subsided.  His counselor described him as "doing exceedingly well," affectionate, and playful.  C.C. described living with his aunt as the "best house he's ever been in and he loves it."  The counselor recommended that C.C. and I.C. permanently reside with their aunt and she desired to adopt them.

The counselor for A.E. and A.E. testified the children were doing very well with their grandmother and making positive progress.  Behavior immediately following their removal included tantrums, fits, yelling, and defiance but subsided since being placed with their grandmother.  The children were described as sweet and bonded with each other.  Their grandmother was doing a good job with them and they were attached to her.  The children felt safe, had food to eat, were happy, and were doing well in school.

Their grandmother hoped to adopt them. Accordingly, we conclude there is clear and convincing evidence to support the trial court's finding that termination of E.V.'s parental rights to all four of her children was in their best interest. E.V.'s sole issue challenging the sufficiency of the evidence to support the termination orders is overruled.

CONCLUSION

The trial court's orders terminating E.V.'s parental rights to A.E. and A.E. in trial court cause number 76,485-D, and as to C.C. and I.C. in trial court cause number 85,000-D, are both affirmed.

Patrick A. Pirtle
Justice

13